IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAY CARACCI, | ) |
| | ) |
| Plaintiff, | ) No. 19-cv-2796 |
| | ) |
| v. | ) District Judge Elaine Bucklo |
| | ) |
| AMERICAN HONDA MOTOR COMPANY, INC., | ) Magistrate Judge Jeffrey Cummings |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff Jay Caracci's motion to compel defendant American Honda Motor Company, Inc. to produce amended discovery responses (Dckt. #50) and plaintiff's motion for leave to file a second supplement to his motion to compel (Dckt. #94). (The Court previously granted plaintiff leave to file an initial supplement to his motion to compel. (Dckt. #65).) For the reasons set forth below, plaintiff's motion to compel discovery is granted in part and denied without prejudice in part. Because the Court reviewed plaintiff's second supplement and defendant's corresponding response in the course of issuing this decision, the motion to file a second supplement is likewise granted.

**I.    BACKGROUND**

**A.    Allegations in Complaint**

Plaintiff Jay Caracci ("Caracci") alleges in his Second Amended Complaint that he purchased a 2015 Honda CR-V ("CR-V") from defendant American Honda Motor Company ("Honda") on November 17, 2015.[1] (Dckt. #84 at 4.) In connection with this purchase, Honda

---

[1] Plaintiff's First Amended Complaint (Dckt. #1-1) was removed to the Northern District from the Circuit Court of Cook County in April 2019. Following the completion of the briefing on the motion to compel,

1

issued a three-year "new vehicle warranty," which covered electrical wiring but excluded damage caused by "acts of nature." (*Id.* at 5.) In December 2017 – two years after purchasing the CR-V – Caracci experienced a complete loss of power steering while operating the vehicle. (*Id.* at 6.) When he took the vehicle in for inspection, Honda staff informed him that the CR-V's electrical wiring "had been chewed and/or eaten." (*Id.*) Specifically, the Torque Sensor Harness ("part 22") and the Motor ("part 23") of the vehicle's Power Steering Gearbox ("Gearbox") had been damaged by rodent chewing. (*Id.*) Though the new vehicle warranty remained in effect, Honda informed Caracci that the chewing damage constituted an "act of nature" and was not covered by the warranty. Caracci paid for the repairs himself. (*Id.*)

Prior to Caracci's purchase of his CR-V, Honda had begun the process of making its vehicles more "eco-friendly." (*Id.* at 2.) In pursuit of this goal, Honda allegedly sought out suppliers who "used epoxidized soybean oil and other bio-based parts" for its electronic power steering gearbox parts. (*Id.* at 1-2.) Honda has received hundreds of complaints regarding extensive damage from rodents and some consumers have speculated the damage is connected to Honda's shift to eco-friendly materials. (*Id.* at 7.) Caracci further alleges that Honda began developing a potential solution in the form of "Rodent Tape," which could be wrapped around wiring to deter rodent attacks. (*Id.* at 11.) Honda directed one of its suppliers to apply Rodent Tape to a knock sensor harness in other Honda vehicles, but not to harnesses within the 2015-2018 CR-V's. (*Id.*) Moreover, Honda did not instruct CR-V customers to apply the tape as a

---

Caracci was granted leave to file a Second Amended Complaint ("SAC"). (Dckt. #84.) Although the parties' briefs were written in reference to the original complaint, the SAC is the operative pleading for determining what discovery is now relevant to his claims. *Lindell v. Meli*, No. 18-CV-2027, 2020 WL 4904076, at *1 (E.D.Wis. Aug. 18, 2020) (court deemed second amended complaint the operative complaint though motion to compel discovery was filed before second amended complaint); *United States ex rel. Conroy v. Select Medical Corporation*, 307 F.Supp.3d 896, 901 (S.D.Ind. 2018) ("[T]he court must obviously consider what the appropriate discovery is in light of the claims encompassed in the second amended complaint.").

preventative measure, nor did it inform customers that repairs for such damage would not be covered under its warranty agreement. (*Id.* at 11.)

Caracci filed this putative class action against Honda alleging that Honda violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, and breached its implied and express warranties. (Dckt. #84.) In Count I, Caracci alleges that Honda violated the ICFA by failing to take action to protect the wiring prior to sale or cover expenses for damage from these attacks, despite its knowledge that the electrical wiring connected to its engine compartments was vulnerable to rodent chewing. (*Id.* at 10.) Caracci further alleges that Honda's failure to adequately inform consumers that (1) the wiring system was vulnerable to rodent attack; (2) Rodent Tape should be applied as a preventative measure; or (3) Honda would consider repairs necessitated by rodent damage to be "acts of nature" outside the scope of the warranty coverage, constituted "unfair acts" in violation of the ICFA. (*Id.*) In Count II, Caracci alleges that Honda breached its implied warranty of merchantability and fitness for ordinary purpose by selling cars that "include wiring that acts as food for rodents" and then failing to repair or replace the damaged wiring and component parts. (*Id.* at 14.) Finally, in Count III, Caracci alleges that Honda breached its express "new vehicle" warranty when it refused to cover rodent damage that was caused, not by an act of nature, but by "a failure in Honda's product materials." (*Id.* at 15.) Caracci seeks damages and legal costs. (*Id.* at 13, 14, 16.)

**B.    Discovery**

Discovery in this matter is ongoing. Caracci served his first set of written discovery in October 2019. (Dckt. #50-1.) Honda served its initial interrogatory answers on November 14, 2019 and its document production response on February 21, 2020. (Dckt. #50-2.) After the parties met and conferred, Honda provided amended discovery responses in May 2020 and July

3

2020. (Dckt. ##50-4, 50-5.) The instant motion to compel was filed on October 22, 2020. (Dckt. #50.) Since this motion was filed, discovery has continued to progress. On October 29 and October 30, 2020, Honda supplemented its document production with 15,410 pages of additional documents. (Dckt. #60 at 2.) On December 11, 2020, Caracci filed a supplement asking the Court to compel Honda to produce specific testing data from one of Honda's Japanese suppliers, Sumitomo, as well as any other rodent or "chew" testing data in Honda's possession performed by any other supplier since 2003. (Dckt. #60.) Caracci asserts this data is relevant to Interrogatory No. 24 and Document Production Requests Nos. 26 and 31. *Id*.

## II.   LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018). Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). Discoverable information is not limited to evidence admissible at trial. Fed.R.Civ.P. 26(b)(1).

## III.   ANALYSIS

Caracci asserts that Honda's responses to (1) Interrogatory No. 9; (2) Document Production Request No. 38; and (3) Interrogatory No. 24 and Document Production Requests Nos. 26 and 31 remain deficient. These requests seek the following information/documents:

4

>**Interrogatory No. 9:** State whether there were any tests or inspections concerning use, safety, environmental impact, and/or durability conducted on [any of] the P.S. Gearbox components . . . and describe when such tests were performed and whether the results are in Honda's possession.
>
>**Document Production Request No. 38:** All studies or expert reports commissioned by Honda relating to the use of soy-based epoxy coating in vehicle wiring.
>
>**Interrogatory No. 24:** Identify the creator of the product now known as Honda Rodent Tape, describe when Honda first began branding Rodent Tape as its own, and from whom Honda obtained the branding rights.
>
>**Document Production Request No. 26:** All documents discussing Honda's marketing, sale, and distribution of Honda-branded Rodent Tape.
>
>**Document Production Request No. 31:** All correspondence with the original manufacturer(s) and supplier(s) of Honda-branded Rodent Tape relating to its use, functionality, composition, and application.

(Dckt. #50-1.) Caracci seeks an order compelling Honda to supplement its answers and responses to these requests and, where warranted, to produce a privilege log detailing its claims of privilege. The Court addresses each category of requests in turn and agrees – at least in part – that further supplementation is required.

      **A.**      **Honda must provide a revised answer to Interrogatory No. 9.**

Each interrogatory posed to a party "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3). To this end, it is well-settled that a responding party "must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D.Pa. 1996); *Brock v. Hooker Chem. & Plastics Corp.*, No. 83 C 8383, 1985 WL 2120, at *1 (N.D.Ill. July 24, 1985) (same). A party objecting to an interrogatory bears the burden "to show why the interrogatory is improper." *United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 572 (E.D.Ill. 1975).

In Interrogatory No. 9, Caracci asks Honda to "[s]tate whether there were any tests or inspections concerning use, safety, environmental impact, and/or durability conducted on the

5

P.S. Gear Box components . . . and describe when such tests were performed and whether the results are in Honda's possession." (Dckt. #50, Exhibit 1, at 5.) Honda asserts that this interrogatory is overly broad and seeks responsive information that is protected by the attorney work product doctrine, the attorney client privilege, and/or the consulting expert privilege. (Dckt. #59.)

        1.        **Plaintiff may seek otherwise relevant discovery regarding any of the Gearbox components.**

Honda argues Interrogatory No. 9 is overly broad in two respects. First, Honda asserts that the interrogatory goes beyond the *scope* of the damage at issue by requesting information on parts other than 22 and 23 of the Gearbox, which the parties agree were the only parts damaged in Caracci's vehicle. (Dckt. #59 at 7.) Honda asserts it must only disclose information related to those two parts and cites authority where discovery was limited to a particular part of a machine that had malfunctioned. In *Bartlett v. Deere & Co.*, for example, the court limited discovery to the bottom roller assembly of a baler that caught fire because the plaintiff alleged that a defect in that particular component had caused the fire. No. 4:09-cv-3168, 2010 WL 3789540, at *2 (D.Neb. Sept. 21, 2010) (noting that plaintiff failed to explain how information on the development of any other component might "lead to the discovery of information explaining why the baler's bottom roller assembly started to burn.").

Caracci responds that the scope of the interrogatory is sufficiently tailored because it is limited to the thirty-nine parts of the Gearbox, rather than the CR-V as a whole. (Dckt. #50 at 5.) The Court finds it helpful to consider Interrogatory No. 9 in the context of what Caracci hopes information obtained through discovery will explain: namely, why parts 22 and 23 of the Gearbox were susceptible to chewing. He claims the answer has to do with Honda's use of wiring that "attracts rodents" and Honda's failure to incorporate preventative measures. (Dckt.

#84 at 15.) Unlike in *Bartlett*, then, the alleged defect is not limited to a particular part, but instead concerns a range of materials and vulnerabilities that could have been used or observed in any number of parts within the Gearbox. Consequently, pertinent tests on one component of the Gearbox could easily shed light on decisions Honda made regarding parts 22 and 23. Accordingly, the Court overrules the "scope of the damage" portion of Honda's objection and finds that Honda has inappropriately limited its disclosures to information on parts 22 and 23 of the Gearbox.

**2. Discovery must be limited to tests and inspections concerning the type of damage at issue: namely, damage from rodents.**

Honda's second objection, namely, that Interrogatory No. 9 is improperly overbroad because it reaches beyond the *type* of damage Caracci alleges (damage from rodents), is more persuasive. Honda accuses Caracci of engaging in a "fishing expedition" by seeking information on tests unrelated to rodent damage (Dckt. #59 at 8), and Caracci never responded to Honda's claim that discovery must be limited to the type of damage alleged.[2] While the burden is on the responding party to show why a particular discovery request is improper, *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 450 (N.D.Ill. 2006), "when the discovery request is overly broad or relevancy is not apparent, the requesting party must establish relevancy." *Hills v. AT&T Mobility Services, LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *4 (N.D.Ind. July 22, 2021). Caracci fails to meet that burden here.

As noted above, for discovery to be relevant, it must be related to the claims or defenses at issue in a case, rather than "its general subject matter." *Motorola Sols., Inc.*, 365 F.Supp.3d at

---

[2] It is well-established that "[f]ailure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *see also Estate of Logan v. City of South Bend*, No. 3:19-cv-495-DRL-MGG, 2020 WL 1284742, at *5 (N.D.Ind. Mar. 17, 2020) (finding that plaintiff waived any argument against defendant's objection that it failed to address in its motion to compel).

924. Caracci's claims are relatively narrow: namely, that Honda knew its vehicles were susceptible to damage from rodents due to its use of improper materials, and subsequently failed to warn its consumers about that damage or take steps to protect them from it. Interrogatory No. 9 – which asks that Honda state whether any tests or inspections have been conducted "concerning the use, safety, environmental impact, and/or durability" of the Gearbox components – is not sufficiently tailored to that theory. *See Everett v. BRP-Powertrain, GmbH & Co. KG*, No. 14-C-1189, 2018 WL 1757612, at *1 (E.D.Wisc. April 12, 2018) ("Only those documents that relate to the plaintiff's theory of why the engine is defective would be relevant.").

Accordingly, the Court finds that Interrogatory No. 9 is, indeed, overbroad considering the type of the damage at issue in this case. Nonetheless, the Court orders Honda to amend its answer to Interrogatory No. 9 on or before October 27, 2021 by: (1) stating whether any tests or inspections *concerning rodent damage* have been conducted *on any of the P.S. Gearbox components*; (2) describing when such tests were performed; and (3) stating whether the results of any such tests are in Honda's possession. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) ("[A] district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties."). This information is clearly relevant to Caracci's claims and the Court notes that Honda has not argued the production of such an answer would be overly burdensome.

   **3. If Honda maintains that Interrogatory No. 9 seeks privileged information, it must submit a privilege log.**

In its response, Honda states that, "outside of testing performed at the direction of counsel as part of litigation, if any, [Honda] has not commissioned any tests or inspections

8

relating to the alleged presence of soy-based wiring insulation in [parts 22 and 23]." (Dckt. #59 at 9.) Accordingly, Honda claims, any testing it does possess would be protected by the attorney work product doctrine and/or attorney client privilege. The Court finds that this is not an adequate response to Interrogatory No. 9. First, it fails to encompass the interrogatory scope as now defined by the Court, which includes testing related to rodent damage (rather than the presence of soy) in any of the Gearbox components (rather than parts 22 and 23).

Furthermore, if Honda asserts that information response to this interrogatory is privileged, it must comply with Rule 26(b)(5) by providing a privilege log; simply objecting on the ground of privilege is insufficient. *U.S. ex. rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 523 (D.D.C. 2006) ("As to the general objection on the basis of privilege, this Court notes that Relator has foreclosed any challenge to the interrogatories on this ground because of his failure to file a privilege log as required by Fed.R.Civ.P. 26(b)(5)"); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 8 (D.D.C. 2007) ("Since Bacardi has yet to supply any sort of privilege log, the Court will make no rulings on the merits of their claim and order Bacardi to answer the Interrogatories in full and provide Centinela with a privilege log where appropriate.").

Honda contends that it is unable to produce a privilege log because any description it might give of the tests or inspections in question is privileged information in and of itself. This is so, Honda opines, because its production of a log would necessarily reveal its "attorney's strategy in defending this action, mental impressions and thought processes." (Dckt. #59 at 12.) (internal quotation marks excluded.) To support its position, Honda relies heavily on the decision in *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641 (N.D.Ill. 1994), where the court denied plaintiff's request for the production of golf club heads that had been cut open for

9

inspection at the direction of defendant's counsel. The court concluded that the attorney's selection of clubs to be cut open constituted work product, because it was "strongly indicative of the mental impressions, conclusions, opinions, or legal theories" of the attorneys and that the production of the clubs would therefore, reveal counsel's work product. *Id.* at 647. *Vardon* is distinguishable because answering the interrogatory will not reveal counsel's work product. All that Caracci seeks at this stage is information regarding whether any tests were performed, and a general description of what those tests entailed. This is equivalent to the *Vardon* plaintiff knowing that club heads had been cut open at the request of defense counsel which, in itself, did not reveal counsel's work product.

The two other cases cited by Honda are similarly inapposite. In both cases, unlike here, the party asserting the privilege had provided opposing counsel with a general description of the documents at issue and the courts did not relieve the responding party of the obligation to substantiate its privilege. In *Am. Society for Prevention of Cruelty to Animals v. Ringling Brothers & Barnum & Bailey Circus*, 233 F.R.D. 209 (D.D.C. 2006), for example, defendants refused to disclose "documents generated or obtained by defendants' counsel for the purpose of cross-examining and impeaching [a former employee]." *Id.* at 212. The question considered by the court was not whether defendants had to submit a privilege log, but what that log had to include. The court found that the documents at issue need not be described on the privilege log because:

> defendants have already provided plaintiffs with enough information to enable them to assess the applicability of the privilege. Specifically, defendants have repeatedly explained that their attorneys gathered publicly available documents about Rider in the course of this litigation, which they assert were not previously in the possession of defendants, for the purpose of cross-examining and impeaching him. I do not see how additional information would better enable plaintiffs to evaluate the applicability of work product protection to the documents at issue.

10

*Id.* at 213.³ Honda has not made any disclosures that would allow Caracci – or the Court – to determine what documents are at issue or even whether any responsive documents exist at all.

Thus, the Court will grant this part of Caracci's motion and order Honda to answer Interrogatory No. 9 as limited above. The Court doubts that answering this interrogatory will reveal any privileged information because the interrogatory requests essentially the same information that must be disclosed in a privilege log under Rule 26(b)(5): namely, whether the specified tests were performed, when they were performed, and whether Honda possesses the results.⁴ Nonetheless, if Honda persists in its belief that answering this interrogatory would reveal privileged information, it must produce a privilege log that is compliant with Federal Rule of Civil Procedure 26(b)(5). *See, e.g., Pogue,* 235 F.R.D. at 523.

  **B.  Caracci's request for the production of studies on the use of soy-based epoxy coating (Request No. 38) is denied in light of Honda's amended disclosures.**

In Request for Production No. 38, Caracci originally sought "[a]ll studies or expert reports commissioned by Honda relating to the use of soy-based epoxy coating in vehicle wiring." (Dckt. #50 at 1.) Honda committed to producing only "documents concerning studies or expert reports commissioned in the regular course of business, if any, relating to the alleged presence of soy-based wiring insulation in the Torque Sensor Harness [part 22] or rodent damage

---

³ Similarly, in *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168 (M.D.Tenn. 2014), the court found that a privilege log was unnecessary where "the affidavits of [plaintiff's in-house] counsel and other documents provide an ample basis to assess the privilege issues raised by the parties' discovery motions." *Id.* at 191. The court went on to clarify that most cases require a privilege log, but an exception could be made "given the international scope of this controversy" and the complexity of the litigation. *Id.* at 193-94. Here, the scope of the litigation is not so broad that the need for an exception to the general rule exists.

⁴ Citing Rule 26(b)(4)(B), Honda further argues that the consulting expert privilege prevents the disclosure of an amended response to Interrogatory No. 9 because any testing Honda "commissioned a consulting expert to run in connection with this litigation, and the identity of such consulting expert, is not discoverable unless and until [Honda] designates such person as a testifying expert or Plaintiff demonstrates 'exceptional circumstances.'" (Dckt. #59 at 15.) The Court dismisses this objection because this interrogatory does not seek the identity of any consulting experts or the result of any tests performed by them.

to the Torque Sensor Harness in 2015-2016 CR-Vs." Shortly after Caracci filed the motion to compel, Honda served an amended response stating that "there are no responsive documents relating to the two parts at issue." (Dckt. #59 at 18.)

Later in the discovery process, Honda made another disclosure regarding the presence of soy-based wiring in the Gearbox as a whole (rather than only part 22). In its reply to Caracci's supplement, Honda stated that it had produced evidence to Caracci proving "there was **_no soy_** in the wiring contained anywhere in Plaintiff's original equipment electronic power steering gear box." (Dckt. #66 at 7.) If that is correct, Honda has no documents in its possession that are responsive to Request No. 38. To eliminate any question on this issue, Honda is ordered to certify, on or before October 19, 2021, that it did not use soy-based epoxy in any of the 2015-2016 CR-V Gearbox components. *See CytoSport, Inc. v. Nature's Best, Inc.*, No. CIV S-06-1799 DFL EFB, 2007 WL 1040993, at *5 (E.D.Ca. Apr. 4, 2007) ("courts occasionally order a responding party to provide verified responses when a dispute arises as to whether all the requested documents have been produced" and ordering party to provide verified responses that it has produced all responsive documents); *Grove v. Unocal Corp.*, No. 3:04-cv-00096-TMB, 2008 WL 11429528, at *11-12 (D.Alaska Feb. 12, 2008) (same).

        **C.**        **Honda must produce the Sumitomo testing documents and any other rodent tape-related testing data it received from other suppliers.**

After filing his motion to compel, Caracci deposed Honda's Rule 30(b)(6) witness, Charles Golding, who was designated as "a person with knowledge regarding: (a) Honda's meetings or correspondence with its suppliers regarding the composition of wire harnesses; and (b) how 'Rodent Tape' (part number 4019-2317) 'came to be conceived, designed, and presented to Honda management or engineers and ultimately determined to be a product targeted for distribution to Honda dealerships,'" among other topics. (Dckt. #60 at 3.) When asked about

12

how Honda's Rodent Tape came to be conceived, Golding testified that Honda began distributing the product to dealerships in July or August of 2010. (*Id.* at 4.) He further noted that Honda had first encountered the product in 2004 or 2005 when one of its Japanese suppliers, Sumitomo, began experimenting with its use. (*Id.* at 4.) Golding disclosed that Sumitomo had performed tests with similar tape when producing its own knock sensor wire harnesses, including a "chew test" and other testing. (*Id.*) According to Golding, Sumitomo had provided those tests to Honda. (*Id.*)

Honda did not provide the Sumitomo testing in response to Caracci's Document Production Request No. 31, which sought "[a]ll correspondence with the original manufacturer(s) and supplier(s) of Honda-branded Rodent Tape relating to its use functionality, composition, and application." (*Id.* at 5.) Caracci asks this Court to compel Honda to produce (1) the Sumitomo testing documents referenced by Golding; and (2) any other rodent or "chew" testing results performed by Honda's other suppliers (Nippon Seiko Co., Ltd., NSK Steering System America Inc., or American Showa Blanchester) since 2003. (*Id.*) In response, Honda states that it did not produce the Sumitomo testing documents because they are irrelevant to the case. (Dckt. #66 at 4.) The Court disagrees.

Honda's argument that the Sumitomo tests are irrelevant rests on its assertion that this case is "solely focused" on the presence of soy-based materials in the 2015-2018 Honda CR-V Gearbox wiring. (*Id.* at 4.) Because the case is so limited, Honda argues, documents and testing that do not concern the chemical composition of the two parts at issue are irrelevant:

> A supplier's decision sixteen years ago to wrap a knock sensor wire harness in rodent-tape for certain Honda vehicles not at issue in this case, and the decision not to do so with respect to the power steering wiring in the 2015-2018 CR-Vs, were not due to the chemical composition of the wires.

13

(*Id.* at 7-8.) However, the District Court has since rejected this narrow framing of Caracci's claims in an order granting Caracci's motion for leave to file a Second Amended Complaint. (Dckt. #83.) The District Court clarified that, despite the amendments to the complaint, which mention specific materials less frequently, Caracci "continues to allege that his vehicle and those of the class members contain soy or bio-based components . . ." Even assuming Caracci has changed his allegations about the specific vehicle components that incorporate soy or bio-based materials, Judge Bucklo wrote, his "essential theory" is unchanged: "that defendant was aware of a defect in its wiring system components but did not warn consumers or take steps to mitigate the defect prior to sale, instead waiting for it to result in damages it would then exclude from its warranty coverage." (*Id.* at 4.) Judge Bucklo went on to observe that evidence of "the steps defendant took to investigate the occurrence and offset the impact of rodents chewing on its vehicles' wiring systems" supported this theory. (*Id.*) The District Court's finding on this point is law of the case which this Court is not at liberty to freely disregard. *See, e.g., Avita v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995).

As noted above in Section III(A)(1), the Court finds that discovery should not be limited to the two parts chewed in Caracci's own vehicle though it must be focused on information related to Caracci's theory of liability. As articulated by Judge Bucklo, this theory is *not* limited to the chemical composition of the vehicle's parts. Rather, any evidence related to Honda's alleged failure to take preventative action to protect CR-V consumers from foreseeable rodent damage is relevant. This includes its decision to develop Rodent Tape and apply it to some wires, but not others, before sale. Accordingly, the Court finds that Honda must produce the Sumitomo testing documents referenced by Golding and any other rodent or "chew" testing results performed by Honda's other suppliers and given to Honda in the regular course of

14

business since 2003. The chemical composition of the wires used in the rodent tape tests is irrelevant to whether such tests must be produced.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel is granted in part. By October 27, 2021, defendant is ordered to amend its answer to Interrogatory No. 9 and to produce the Sumitomo testing documents referenced by Golding and any other rodent or "chew" testing results performed by Honda's other suppliers (Nippon Seiko Co., Ltd., NSK Steering System America Inc., or American Showa Blanchester) since 2003. Honda must also certify that there is no soy-based epoxy in any Gearbox components by October 21, 2021. Plaintiff's motion to compel is otherwise denied. Plaintiff's motion for leave to file a second supplement to his motion to compel is granted.

**ENTERED:** September 29, 2021

**Jeffrey I. Cummings**
**United States Magistrate Judge**